UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                                 :

LUIS MOROCHO,                          :
                                 :

                 Plaintiff,      :

                                 :

            v.                      :
                                 :

NEW YORK CITY, POLICE OFFICER     :
ANTHONY CUADRADO, DETECTIVE     :
JOHN LOMBARDI, and DETECTIVE      :
ANTHONY BOTTA, Individually, and as   :
members of the New York City Police      :
Department,                           :
                                 :

               Defendants. :
                                 :
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 31, 2015

13 Civ. 4585 (KPF)

<u>OPINION AND ORDER</u>

KATHERINE POLK FAILLA, District Judge[1]:

On January 31, 2013, a woman complained to the New York City Police Department (the "NYPD") that she had left a purse containing several credit cards on a subway train, and that someone was now using her credit cards to make unauthorized purchases, including purchases from the Metropolitan Transportation Authority (the "MTA"). In the course of their investigation, NYPD officers learned that one of the credit cards had been used to purchase Metrocards, including one then currently in use. On February 26, 2013, with the assistance of the MTA, the NYPD modified the turnstiles at a subway station in lower Manhattan where the offending Metrocard had been used, so that the turnstiles would alert if the card were used again. The following

---

[1]     The Clerk of Court is directed to amend the caption to reflect the proper spelling of Defendant Botta's name.

evening, one of the turnstiles alerted when Plaintiff used the Metrocard. Plaintiff was arrested and charged with possession of stolen property, and released the following day when prosecutors declined prosecution of the case.

On July 2, 2013, Plaintiff brought suit against the City of New York and the NYPD personnel involved in his arrest. Plaintiff alleged deprivation of his civil rights under 42 U.S.C. § 1983 in the form of false arrest, excessive force, and failure to intervene. At the close of discovery, Defendants moved for summary judgment as to all of Plaintiff's claims. For the reasons set forth in the remainder of this Opinion, the Court grants Defendants' motion.

## BACKGROUND[2]

### A.   Factual Background

On January 31, 2013, a woman advised NYPD officers at the Queensboro Plaza subway station that she had mistakenly left her purse on a train; that the purse contained several credit cards, including one issued by Capital One (the "Credit Card"); and that approximately $1,120 in unauthorized purchases had been made on the Credit Card — including several from the MTA — at the

---

[2]    The facts set forth herein are drawn from Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Def. 56.1"); the Declaration of Jennifer L. Koduru in Support of Defendants' Motion for Summary Judgment ("Koduru Decl.") and the exhibits attached thereto; Plaintiff's Counter-Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Pl. 56.1 Opp."); Defendants' Response to Plaintiff's Rule 56.1 Statement and Reply to Plaintiff's Response ("Def. 56.1 Reply"); and the deposition testimony of various witnesses ("[Name] Dep."). For convenience, Defendants' opening brief is referred to as "Def. Br.," Plaintiff's opposition brief as "Pl. Opp.," and Defendants' reply brief as "Def. Reply."

Citations to a party's Rule 56.1 Statement incorporate by reference the documents cited therein. Where facts stated in a party's Rule 56.1 Statement are supported by testimonial or documentary evidence, and denied with only a conclusory statement by the other party, the Court finds such facts to be true. *See* S.D.N.Y. Local Rule 56.1(c)-(d).

time she called Capital One to report its loss.  (Def. 56.1 ¶¶ 1-2).  The NYPD began an investigation into the matter.

A few days later, on February 6, 2013, police learned that one of the unauthorized purchases related to a Metrocard and, further, that the Metrocard was still in use.  (Def. 56.1 ¶ 3).  The following day, Defendant Anthony Cuadrado, an NYPD officer, viewed surveillance footage at the 42nd Street/Times Square subway station of a woman holding the complaining victim's wallet as she made multiple purchases of Metrocards.  (*Id.* at ¶ 4). Officer Cuadrado later determined that one of the Metrocards was continuing to be used late at night at the F train station located at East Houston Street and Second Avenue in Manhattan (the "Second Avenue Station").  (*Id.* at ¶ 5).

On February 26, 2013, Officer Cuadrado and other NYPD officers went to the Second Avenue Station in an effort to apprehend the individual who was using the fraudulently-obtained Metrocard.  (Def. 56.1 ¶ 6).  MTA personnel modified the turnstiles so that an alert light would flash if the Metrocard were used.  (*Id.*).  No alerts were observed that evening, so officers repeated the process the following evening, February 27, 2013.  (*Id.* at ¶ 7).[3]  At approximately 11:45 p.m., one of the turnstiles alerted as Plaintiff used the Metrocard.  NYPD officers approached Plaintiff, advised him that the Metrocard had been purchased with a stolen credit card, and placed him under arrest. (*Id.* at ¶¶ 7-8; *see* Pl. 56.1 Opp. ¶ 7 (disputing that the officers identified

---

[3]     Defendants' 56.1 Statement reports the date as February 27, 2014, but context makes clear that this is a typographical error.

themselves before placing Plaintiff under arrest)).  Plaintiff was handcuffed by Defendant Anthony Botta in connection with his arrest.  (Def. 56.1 ¶ 8).

Plaintiff executed a written *Miranda* waiver and spoke with Officer Cuadrado; the parties dispute whether execution of the waiver took place before or after his questioning.  (*Compare* Def. 56.1 ¶¶ 9-10, *with* Pl. 56.1 ¶ 9). While disclaiming knowledge of the female purchaser of the Metrocard, Plaintiff explained that he obtained the card from his wife, who in turn had obtained it from her father.  (Def. 56.1 ¶¶ 9-10).  The following day, February 28, 2013, Plaintiff was released when the District Attorney's Office declined to prosecute the charges.  (*Id.* at ¶ 12).

## B. Procedural Background

Plaintiff filed his complaint in this action on July 2, 2013, bringing claims for false arrest, excessive force (in the form of excessively tight handcuffs), and failure to intervene; he filed an amended complaint on November 21, 2013.  (Dkt. #1, 6).  On September 8, 2014, Defendants moved for summary judgment.  (Dkt. #17-20).  Plaintiff filed his opposition papers on October 8, 2014 (Dkt. #21), and the briefing was complete with the filing of Defendants' reply papers on October 22, 2014 (Dkt. #22-23).

## DISCUSSION

## A. The Standard for Summary Judgment Motions

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys* v. *City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  The movant may discharge this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan* v. *N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (finding summary judgment appropriate where the non-moving party fails to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim" (internal quotation marks omitted)).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial" using affidavits or otherwise, and cannot rely on the "mere allegations or denials" contained in the pleadings.  *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323-24; *Wright* v. *Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to

the material facts," *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles* v. *Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)).  Furthermore, "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks* v. *Baines,* 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher* v. *Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (internal quotation marks and citations omitted).

   "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003).  However, in considering "what may reasonably inferred" from witness testimony, the court should not accord the non-moving party the benefit of "unreasonable inferences, or inferences at war with undisputed facts." *Berk* v. *St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 342 (S.D.N.Y. 2005) (citing *County of Suffolk* v. *Long Island Lighting Co.*, 907 F.2d 1295, 1318 (2d Cir. 1990)).

**B.     Analysis**[4]

1.     **The Court Grants Summary Judgment as to Plaintiff's False Arrest Claims**

a.     **Defendants Had Probable Cause to Arrest Plaintiff**

i.     **Applicable Law**

Section 1983 establishes liability for deprivation, under the color of state law, "of any rights, privileges, or immunities secured by the Constitution."  42 U.S.C. § 1983.  Here, Plaintiff alleges Section 1983 claims for false arrest, excessive force, and failure to intervene.  (*See* Koduru Decl. Ex. N (Amended Complaint)).  Starting with his first cause of action, to establish a claim for false arrest, Plaintiff must show that: (i) he was intentionally confined; (ii) he was conscious of the confinement; (iii) he did not consent to the confinement; and (iv) the confinement was not privileged.  *Ackerson* v. *City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012); *accord Shain* v. *Ellison*, 273 F.3d 56, 67 (2d Cir. 2001).

A claim for false arrest under Section 1983 is rooted in the Fourth Amendment, which provides an individual with the right to not be arrested without probable cause.  *Weyant* v. *Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ("A § 1983 claim for false arrest[] rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without

---

[4]     While the City of New York is named as a defendant, the allegations in the Amended Complaint are an insufficient predicate for liability.  No claim is brought pursuant to *Monell* v. *Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), nor are there any pendent state-law claims alleged under which the City would be liable on a *respondeat superior* theory.  Accordingly, references in the remainder of this Opinion to "Defendants" refer to the individual officer Defendants against whom claims have been alleged.

probable cause[.]").  In consequence, a claim for false arrest cannot be established when the arresting officer had probable cause to make the arrest. *Singer* v. *Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."); *see also Fulton* v. *Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) ("A § 1983 claim of false arrest based on the Fourth Amendment right to be free from unreasonable seizures may not be maintained if there was probable cause for the arrest.").

"[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Gonzales* v. *City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852 (internal quotation marks omitted)).   The standard is "fluid," and demands not "hard certainties," but rather facts sufficient to establish the sort of "fair probability" on which "reasonable and prudent men, not legal technicians, act." *Illinois* v. *Gates*, 462 U.S. 213, 231-32, 238 (1983) (citations and quotation marks omitted); *see also Florida* v. *Harris*, — U.S. —, 133 S. Ct. 1050, 1055 (2013) ("In evaluating whether the State has met this practical and common-sensical standard, we have consistently looked to the totality of the circumstances.  We have rejected rigid rules, bright-line tests, and mechanistic inquiries in favor of a more flexible, all-things-considered approach." (internal citations omitted)).

When determining whether probable cause to arrest exists, a court "must consider those facts available to the officer at the time of the arrest and immediately before it." *Lowth* v. *Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996). "A court examines each piece of evidence and considers its probative value, and then 'look[s] to the totality of the circumstances' to evaluate whether there was probable cause to arrest and prosecute." *Stansbury* v. *Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (quoting *Panetta* v. *Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)).

Generally speaking, police officers "are entitled to rely on the victims' allegations that a crime has been committed." *Martinez* v. *Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (citing *Singer*, 63 F.3d at 119); *see also Curley* v. *Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (holding that an arrest may be proper "[w]hen information is received from a putative victim ... unless the circumstances raise doubt as to the person's veracity" (citing *Singer*, 63 F.3d at 119)); *Miloslavsky* v. *AES Eng'g Soc., Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992) ("The veracity of citizen complaints who are the victims of the very crime they report to the police is assumed." (citing *Adams* v. *Williams*, 407 U.S. 143, 146-47 (1972))).

Furthermore, officers are "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Martinez*, 202 F.3d at 635 (internal quotation marks omitted) (quoting *Krause* v. *Bennett*, 887 F.2d 362, 372 (2d Cir. 1989)); *accord Panetta*, 460 F.3d at 396. That said, an officer may not "deliberately disregard facts known to him which establish"

9

an exculpatory defense.  *Jocks* v. *Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003).

To the contrary, an officer's awareness of the facts supporting an exculpatory

defense may eliminate probable cause.  *Id.* at 135.  Probable cause is not

eliminated, however, by the mere existence of evidence that could permit a

conclusion of innocence: "[O]nce officers possess facts sufficient to establish

probable cause, they are neither required nor allowed to sit as prosecutor,

judge or jury.  Their function is to apprehend those suspected of wrongdoing,

and not to finally determine guilt through a weighing of the evidence."  *Panetta*,

460 F.3d at 396 (citation omitted); *see also id.* at 395 (observing that "probable

cause does not require absolute certainty" (citation and quotation marks

omitted)).

 "The question of whether or not probable cause existed may be

determinable as a matter of law if there is no dispute as to the pertinent events

and the knowledge of the officers."  *Weyant*, 101 F.3d at 852; *accord Zellner* v.

*Summerlin*, 494 F.3d 344, 368-69 (2d Cir. 2007) (collecting cases).

### ii. Discussion

 While the parties spend considerable time addressing whether Plaintiff

waived his *Miranda* rights at the precinct house and what he said thereafter,

such disputes are immaterial to the instant analysis because they occurred, if

at all, after Plaintiff's arrest.  Similarly, any statements made by Plaintiff at the

Second Avenue Station appear to have been made after he was handcuffed,

and thus arrested for Fourth Amendment purposes.  (*Cf.* Koduru Decl. Ex. B at

76-77 (excerpts from deposition of Anthony Cuadrado)).  And as noted

previously, "'[w]hen determining whether probable cause exists courts must consider those facts available to the officer at the time of the arrest and immediately before it.'"  *Caldarola* v. *Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002) (quoting *Lowth*, 82 F.3d at 567).

Defendants argue that they had probable cause to arrest Plaintiff under Section 165.40 of the New York Penal Law, which provides that "[a] person is guilty of criminal possession of stolen property in the fifth degree when he knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof." N.Y. Penal Law § 165.40.  (Def. Br. 6).  New York courts have found probable cause for this offense established when a complaining victim identifies property as having been stolen from him or her; by extension, it is established when police investigation identifies property in a person's possession that was indisputably purchased with funds stolen from another person.  *See People* v. *Bethune*, 678 N.Y.S.2d 418, 419 (4th Dep't 1998) (burglary victim identified property in defendant's possession as property owned by victim); *see also Diop* v. *City of New York*, 50 F. Supp. 3d 411, 424 (S.D.N.Y. 2014) (finding probable cause to prosecute plaintiff in Section 1983 action where victim identified purse recovered from plaintiff's car as stolen); *see generally United States* v. *Fernandez-Antonia*, 278 F.3d 150, 162 (2d Cir. 2002) (when interpreting state statutes, federal courts should defer to state courts' interpretation of their own statutes).

Here, Defendants received information from a complaining victim that her purse had been left on a train, and, further, that credit cards within that purse had been used to purchase items from the MTA without the victim's authorization.  There was no reason for law enforcement to doubt the victim's veracity; to the contrary, further inquiry (including the post-arrest questioning of Plaintiff and his wife) only bore out her claims.  Through careful investigation, including a review of video surveillance, the NYPD was able to determine that (i) the victim's stolen Capitol One Card had been used by another woman to purchase Metrocards; and (ii) someone was using one of the Metrocards repeatedly at the Second Avenue Station.  It was reasonable for the officers to conclude that the user of the card was either the woman who had made the unauthorized purchase of the Metrocard, a confederate of hers, or someone with whom she had engaged in an unauthorized transfer of the Metrocard.  *See* 21 N.Y.C.R.R. § 1050.4(c) ("Except for employees of the Authority acting within the scope of their employment or other expressly authorized agents of the Authority, no person shall sell, provide, copy, reproduce or produce, or create any version of any fare media or otherwise authorize access to or use of the facilities, conveyances or services of the Authority without the written permission of a representative of the Authority duly authorized by the Authority to grant such right to others.").  With this information, law enforcement set up surveillance at the Station to determine who was using the Metrocard and, upon learning that Plaintiff was using the card in question, arrested him.  (Def. 56.1 ¶¶ 1-7).  On these facts, a

reasonable officer would be entitled to conclude that he or she had probable cause to arrest Plaintiff for criminal possession of stolen property in the fifth degree.

In opposing Defendants' motion, Plaintiff argues that the NYPD had insufficient evidence, at the time they arrested him, of his knowledge that the Metrocard he was using had been purchased with stolen funds.  (Pl. Opp. 7). However, the non-precedential decision on which he relies is inapposite; *Lalumia* v. *Sutton*, No. 13 Civ. 1012 (DNH), 2013 WL 6566064 (N.D.N.Y. Dec. 13, 2013), arose in the context of a motion to dismiss, and involved allegations that the putative victim had conspired with her husband and co-defendant, a police officer, to arrest the plaintiff irrespective of her guilt. Moreover, as Defendants note (Def. Br. 7), the Second Circuit has recognized that "when an officer has evidence that a defendant has engaged in conduct proscribed by law — whether transporting a quantity of drugs, possessing a stolen item, or driving with a suspended license — he has probable cause to arrest the person even without specific evidence on the elements of knowledge and intent that will have to be proved to secure a conviction at trial." *McGuire* v. *City of New York*, 142 F. App'x 1, 3 (2d Cir. 2005) (collecting cases).[5]  In any

---

[5]     *See generally Zalaski* v. *City of Hartford*, 723 F.3d 382, 393 (2d Cir. 2013) (internal citations omitted):

> An assessment of intent frequently depends on circumstantial evidence.  But unlike at trial, where circumstantial evidence must support a finding of culpable intent beyond a reasonable doubt, a probable cause determination . . . can be made on "substantially less" evidence.  Moreover, because "the practical restraints on police in the field are greater with respect to ascertaining intent ..., the latitude accorded to officers considering the probable cause

event, Defendants in this case had evidence of knowledge, certainly sufficient for the probable cause analysis:  While the precise circumstances of Plaintiff's acquisition of the offending Metrocard were unclear, what was clear — from the video surveillance and from the Metrocard ultimately found in Plaintiff's possession — was that Plaintiff had *not* acquired the card from an MTA employee or automated ticket booth, and thus had or should have had reason to doubt its *bona fides.*  Accordingly, a reasonable officer was entitled to conclude that Plaintiff knew the Metrocard had been fraudulently purchased.

### b.    Defendants Are Subject to Qualified Immunity

### i.    Applicable Law

At the very least, Defendants are entitled to qualified immunity. "[Q]ualified immunity is 'an immunity from suit rather than a mere defense to liability.'" *Pearson* v. *Callahan*, 555 U.S. 223, 231 (2009) (quoting *Mitchell* v. *Forsyth*, 472 U.S. 511, 526 (1985)); *see also Zalaski* v. *City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013).  "Under federal law, a police officer is entitled to qualified immunity where [i] his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or [ii] it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Jenkins* v. *City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) (citations and quotation marks omitted).

---

issue in the context of mens rea crimes must be correspondingly great."

14

At the time of Plaintiff's arrest, there was clearly a well-established right to be free from arrest without probable cause.  *See Martinez*, 202 F.3d at 634 (collecting cases).  Therefore, Defendants' entitlement to qualified immunity turns on whether their probable cause determination was objectively reasonable.  "An officer's determination is objectively reasonable if there was arguable probable cause at the time of arrest — that is, if officers of reasonable competence could disagree on whether the probable cause test was met." *Jenkins*, 478 F.3d at 87 (citation and quotation marks omitted); *see also Caldarola*, 298 F.3d at 162 (stating that "in situations where an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity").

### ii.   Discussion

Even were the Court to have found actual probable cause lacking, it would nonetheless have found arguable probable cause established as a matter of law, thus entitling Defendants to qualified immunity.   The facts that developed during the NYPD investigation into the victim's complaint — which are listed in the preceding section and will not be repeated here — rendered it objectively reasonable for Defendants to believe that probable cause existed. On this basis as well, summary judgment is warranted as to this claim, as well as Plaintiff's related claim that Defendants failed to intervene to prevent his false arrest.

15

### 2.     The Court Grants Summary Judgment as to Plaintiff's Excessive Force Claim

#### a.     Applicable Law

The remaining issue concerns Plaintiff's claim that Defendants violated his rights by subjecting him to excessively tight handcuffing during his arrest. "Claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham* v. *Connor*, 490 U.S. 386, 395 (1989); *see also Tracy* v. *Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010).  This standard considers "whether the officers' actions were 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Mickle* v. *Morin*, 297 F.3d 114, 120 (2d Cir. 2002) (quoting *Graham*, 490 U.S. at 397).

"To determine whether the amount of force applied to the plaintiff was reasonable the Court should consider: [i] the severity of the crime at issue, [ii] whether the suspect poses an immediate threat to the safety of the officers or others, and [iii] whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 386.  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citing *Terry* v. *Ohio*, 392 U.S. 1, 20-22 (1968)). Furthermore, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in

circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

"Courts apply a separate standard to claims for excessive force in the use of handcuffs." *Sachs* v. *Cantwell*, No. 10 Civ. 1663 (JPO), 2012 WL 3822220, at *14 (S.D.N.Y. Sept. 4, 2012). Specifically, the court should "consider evidence that: [i] the handcuffs were unreasonably tight; [ii] the defendants ignored the arrestee's pleas that the handcuffs were too tight; and [iii] the degree of injury to the wrists." *Esmont* v. *City of New York*, 371 F. Supp. 2d 202, 215 (E.D.N.Y. 2005) (citations omitted). Here, too, the inquiry must reflect the totality of the circumstances, including any facts that bear on whether use of an unusual degree of force may have been justified.

The injury requirement is "particularly important," *Sachs*, 2012 WL 3822220, at *14, because in order "'to be effective, handcuffs must be tight enough to prevent the arrestee's hands from slipping out,'" *Abdul-Rahman* v. *City of New York*, No. 10 Civ. 2778 (ILG), 2012 WL 1077762, at *7 (E.D.N.Y. Mar. 30, 2012) (quoting *Esmont*, 371 F. Supp. 2d at 214). It is clear that "handcuffing can give rise to a § 1983 excessive force claim where plaintiff suffers an injury as a result." *Gonzalez* v. *City of New York*, No. 98 Civ. 3084 (ILG), 2000 WL 516682, at *4 (E.D.N.Y. Mar. 7, 2000). However, "[t]here is a consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort." *Lynch ex rel. Lynch* v. *City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008). "These injuries need not be severe or permanent, but

17

must be more than 'de minimis.'" *Usavage* v. *Port Auth. of N.Y. & N.J.*, 932 F. Supp. 2d 575, 594 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Washpon* v. *Parr*, 561 F. Supp. 2d 394, 407 (S.D.N.Y. 2008); *see generally Corselli* v. *Coughlin*, 842 F.2d 23, 26-27 (2d Cir. 1988) (even if injuries suffered were not permanent or severe, a plaintiff may still recover if force used was unreasonable and excessive).

"'[U]nsubstantiated claims of nerve damage, in the absence of corroborating medical evidence, are insufficient' to sustain a claim of excessive force from handcuffing." *Matthews* v. *City of New York*, 889 F. Supp. 2d 418, 442-43 (E.D.N.Y. Sept. 5, 2012) (quoting *Esmont*, 371 F. Supp. 2d at 215). That said, a plaintiff's testimony about the injuries and subsequent treatment alone may be sufficient to support an excessive force claim on a motion for summary judgment. *See Pelayo* v. *Port Auth.*, 893 F. Supp. 2d 632, 642-43 (S.D.N.Y. 2012) (citing *Mickle*, 297 F.3d at 121-22). A court may also consider whether the plaintiff sought emergency medical treatment right after a handcuffing incident. *See Washpon*, 561 F. Supp. 2d at 407 (denying summary judgment where, *inter alia*, plaintiff "did seek emergency medical treatment right after the incident").

Courts may decide excessive force claims, including claims arising from allegations of excessively tight handcuffs, on motions for summary judgment. *See Matthews*, 889 F. Supp. 2d at 442-43 ("The determination of whether tight handcuffing that causes pain and numbness satisfies the injury requirement may be presented in a motion for summary judgment." (collecting cases)).

18

Qualified immunity may also be a defense to an excessive force claim.  In this context, "the question for the purposes of qualified immunity is whether a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances."  *Usavage*, 932 F. Supp. 2d at 594 (internal quotation marks omitted).

      **b.**    **Discussion**

As an initial matter, the Court agrees with Plaintiff that nothing about his offense of arrest, or his conduct at the time of that arrest, suggested that he posed an immediate threat to the safety of the officers or was "actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490 U.S. at 386.  In addition, while the Court notes Plaintiff's strikingly contradictory testimony concerning whether he asked the officers to loosen his handcuffs because they were too tight (*compare* Morocho Dep. 28 (testimony that he did not ask the arresting officers to loosen his handcuffs), *with id.* at 44-45 (testimony that he specifically asked the arresting officers to loosen his handcuffs and was refused)), it cannot say as a matter of law that he did not make such a request of the officers.  All of that said, the evidence concerning Plaintiff's injuries is insufficient to raise a genuine issue of material fact as to his claim of a constitutional violation for excessive force.  Plaintiff claims to have had marks on his wrist from the handcuffs for a period of approximately one week, and pain or numbness in his right hand or right thumb for a period of approximately one month.  (Morocho Dep. 43; *but see* Jaya Dep. 15-17 (observing no marks on her husband's hands or body after his release)).

Plaintiff sought no medical attention for these injuries, and has submitted no medical records or photographs in connection with this motion.  (*See generally* Morocho Dep. 30; Jaya Dep. 17).

Plaintiff's proffered injuries, while unfortunate, are insufficient under the law of this Circuit to support an excessive force claim, as is clear from a review of the many district court decisions in this area.  *Compare Sachs*, 2012 WL 3822220, at *14-15 (granting summary judgment on tight handcuffing claim where plaintiff experienced 24 hours of swelling and went to hospital but received no treatment for his wrists); *Richardson* v. *N.Y.C. Health & Hosps. Corp.*, No. 05 Civ. 6278 (RJS), 2009 WL 804096, at *10-14 (S.D.N.Y. Mar. 25, 2009) (granting summary judgment where plaintiff experienced pain, bruises, swelling, and red marks, and was given an over-the-counter pain reliever at the hospital); *Esmont*, 371 F. Supp. 2d at 213-15 (granting summary judgment where plaintiff sought treatment for bruising and swelling, and wore a "half-cast" provided by doctor for one week, where plaintiff sought no further medical treatment and provided no medical evidence supporting her claim), *with Usavage*, 932 F. Supp. 2d at 596-97 (denying summary judgment where plaintiff testified as to continuing numbness and pain and medical testing revealed inflammation consistent with compression injury and nerve damage); *Pelayo*, 893 F. Supp. 2d at 642-43 (denying summary judgment where MRI revealed torn cartilage and plaintiff presented evidence of physical therapy and lost time from work); *Washpon*, 561 F. Supp. 2d at 401, 407-08 (denying summary judgment where plaintiff received tetanus shot at hospital following

removal of handcuffs and testified to permanent scarring; noting that the scarring distinguished the case from cases involving temporary pain or swelling, "albeit just barely").  *See generally Usavage*, 932 F. Supp. 2d at 592 ("The most common injuries found to satisfy the injury requirement in handcuff cases are scarring and nerve damage." (collecting cases)); *Lemmo* v. *McKoy*, No. 08 Civ. 4264 (RJD), 2011 WL 843974, at *5 (E.D.N.Y. Mar. 8, 2011) ("Injuries held to be de minimis for purposes of defeating excessive force claims include short-term pain, swelling, and bruising, brief numbness from tight handcuffing, claims of minor discomfort from tight handcuffing, and two superficial scratches with a cut inside the mouth." (internal citations omitted) (collecting cases)).  Accordingly, summary judgment is granted as to Plaintiff's excessive force claim.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED.  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:     July 31, 2015
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge